IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| **Calvin N. Bullock,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | 1:14cv1428 (TSE/TCB) |
| | ) | |
| **Jeff Paul & Dr. Ohai,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Calvin N. Bullock filed this <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs at Meherrin River Regional Jail ("MRRJ"). The defendants have filed a Motion for Summary Judgment, as well as a memorandum of law and numerous supporting exhibits. Dkt. Nos. 30, 31. Plaintiff was given the Notice required by Local Rule 7(K) and the opportunity to file responsive materials pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). Plaintiff has filed a response, and the matter is now ripe for disposition. Additionally, plaintiff has requested appointed counsel in this case. For the reasons that follow, plaintiff's request for appointed counsel must be denied, and defendants' Motion for Summary Judgment must be granted.

### I. Undisputed Factual Background

Plaintiff was transferred to MRRJ on or about September 14, 2013. Dkt. No. 31, Ex. 1 ("Paul Dec.") ¶ 5; Dkt. No. 31, Ex. A to Ex. 1 ("Med. Rec.") at 69, 73; Dkt. No. 31, Ex. 2 ("Ohai Dec.") ¶ 3. At all times relevant to this lawsuit, Nurse Jeff Paul was the Director of Nursing at MRRJ, and Dr. Paul Ohai was a staff physician at MRRJ. Paul Dec. ¶ 1; Ohai Dec. ¶ 1.

On September 18, 2013, Nurse Paul performed plaintiff's initial Patient Health Assessment, and aside from plaintiff's complaint of back pain due to a prior gunshot wound, the assessment was unremarkable. Paul Dec. ¶ 6; Med. Rec. at 74-77; Ohai Dec. ¶ 6. On Monday,

October 7, 2013, plaintiff saw Nurse Practitioner Michael Henning regarding complaints that he had passed three kidney stones over the weekend and that he believed he was currently passing another. Paul Dec. ¶ 7; Med. Rec. at 67-68; Ohai Dec. ¶ 7. Plaintiff was prescribed Tylenol and Ibuprofen for the pain, and he was scheduled for a kidney, ureter, and bladder (KUB) x-ray the following day. Id. Nurse Henning instructed plaintiff to follow up with the Medical Unit after the x-ray was completed. Id.

Plaintiff underwent the KUB x-ray on October 8, 2013, and the x-ray results were normal, showing no kidney stones. Paul Dec. ¶ 8; Med. Rec. at 133; Ohai Dec. ¶ 8. On October 14, 2013, plaintiff was seen again at sick call regarding complaints of continued dysuria (painful urination). Paul Dec. ¶ 9; Med. Rec. at 67, 94; Ohai Dec. ¶ 9. Nurse Henning conducted a prostate specific antigen (PSA) test, which was normal. Id. On November 20, 2013, plaintiff had a follow-up appointment with Nurse Henning. Paul Dec. ¶ 10; Med. Rec. 67; Ohai Dec. ¶ 10. Because plaintiff was in no distress and his dysuria and pain had resolved, he was instructed to follow up with Medical as needed. Id.

On December 13, 2013, plaintiff submitted a sick call request indicating that he was again passing kidney stones. Paul Dec. ¶ 11; Med. Rec. at 6; Ohai Dec. ¶ 11. On December 17, 2013, Nurse Henning saw plaintiff regarding these complaints, and he continued plaintiff on pain medication and referred him to be seen by a facility physician later that week. Id. Then on December 21, 2013, plaintiff was seen by Dr. Edward Boakye, and Dr. Boakye noted that plaintiff believed he had passed his kidney stones and that plaintiff was no longer concerned about it. Paul Dec. ¶ 12; Med. Rec. at 66; Ohai Dec. ¶ 12. Dr. Boakye also noted that plaintiff had recurrent urolithiasis, and he directed plaintiff to increase his daily water intake and reduce the amount of vegetables in his diet that may cause kidney stones. Id.

On February 13, 2014, plaintiff was seen in Medical regarding complaints that he had

recently passed another three kidney stones. Paul Dec. ¶ 13; Med. Rec. at 64-65; Ohai Dec. ¶ 13. Plaintiff told Nurse Henning that the stones had passed readily, but with significant pain. Id. Nurse Henning continued plaintiff on pain medication, and he also prescribed plaintiff hydrochlorothiazide, a diuretic that is effective in reducing calcium in urine and reducing kidney stones. Id.

On February 17, 2014, plaintiff was seen at sick call regarding complaints of nosebleeds and dizziness. Paul Dec. ¶ 14; Med. Rec. at 64; Ohai Dec. ¶ 14. Plaintiff also reported that he had recently passed three more small kidney stones, and he was directed to follow up in two weeks. Id. Approximately two weeks later, on March 3, 2014, plaintiff was against seen at sick call for complaints secondary to kidney stones. Paul Dec. ¶ 15; Med. Rec. at 64, 137; Ohai Dec. ¶ 15. Nurse Henning discontinued the hydrochlorothiazide and referred plaintiff for a renal ultrasound to rule out nephrolithiasis. Id. Then, on March 12, 2014, plaintiff underwent a renal sonogram that showed no kidney stones and was normal. Id.

On June 17 and 18, 2014, plaintiff submitted sick call requests complaining of kidney stones and pain, and he was subsequently referred to Dr. Ohai. Paul Dec. ¶ 16; Med. Rec. at 23-24; Ohai Dec. ¶ 16. On June 20, 2014, plaintiff was seen by Dr. Ohai, and Dr. Ohai determined that plaintiff suffered from hematuria (blood in urine) of questionable etiology, but that plaintiff was otherwise clinically stable. Id. Dr. Ohai ordered repeat lab tests, urinalysis, and blood work and directed plaintiff to follow up with medical within 1-2 weeks after the test results became available. Id.

On June 23, 2014, plaintiff submitted another sick call request complaining of blood in his urine and pain with urination. Paul Dec. ¶ 17; Med. Rec. at 25, 62; Ohai Dec. ¶ 17. He was seen that day by Nurse Henning, who noted that plaintiff had a history of nephrolithiasis, and he again scheduled plaintiff to be seen by Dr. Ohai. Id. On June 28, 2014, plaintiff was seen by Dr. Ohai,

and this time, Dr. Ohai noted that plaintiff reported he had passed dark colored urine in the past and that he had history of kidney stones. Paul Dec. ¶ 18; Med. Rec. at 61; Ohai Dec. ¶ 18. Dr. Ohai also noted that plaintiff mentioned that he does up to 5,000 push-ups daily. Id. Dr. Ohai diagnosed plaintiff with possible early rhabdomyolysis due to excessive exercise, and he placed plaintiff on gym restriction for 30 days. Id. Dr. Ohai also continued plaintiff on pain medication and directed that plaintiff be seen in the clinic for follow-up in 3-4 weeks. Id.

On July 7, 2014, plaintiff submitted another sick call request complaining of leg swelling. Paul Dec. ¶ 19; Med. Rec. at 31, 60-61; Ohai Dec. ¶ 19. On July 19, 2014, plaintiff was seen by Dr. Charles Campbell in Medical for evaluation of his swelling in both legs, but at that time plaintiff reported that the swelling had resolved. Id. Plaintiff also reported that he had not had any kidney stones in the last six days. Id. At that time, Dr. Campbell noted that plaintiff's rhabdomyolysis was resolving and his nephrolithiasis was improving. Id. Plaintiff was also counseled on complications of rhabdomyolysis and the importance of increased hydration regarding nephrolithiasis and rhabdomyolysis. Id.

On August 23, 2014, plaintiff was seen in Medical by Dr. Ohai for complaints of hematuria and flank pain, as well as recurrent urinary tract infections. Paul Dec. ¶ 20; Med. Rec. at 49, 59; Ohai Dec. ¶ 20. Dr. Ohai prescribed an antibiotic to treat the urinary tract infection, and he ordered a repeat urine analysis in 10-14 days. Id. Dr. Ohai also referred plaintiff for a CT scan of the abdomen and pelvis to rule out recurrent nephrolithiasis versus renal neoplasm (cancer of the kidney). Id.

On September 8, 2014, Nurse Paul saw plaintiff for his annual health assessment. Paul Dec. ¶ 21; Med. Rec. at 78-80. At that time, plaintiff had no medical complaints, but he did mention a medical history of indigestion, high blood pressure, and hematuria. Id. During this appointment, plaintiff asked Nurse Paul to check on his pending outside referral, and Nurse Paul

confirmed with the appointment secretary that an outside appointment had been scheduled for plaintiff on September 10, 2014. Id. Then on September 10, 2014, Nurse Paul received and responded to an Inmate Grievance submitted by the plaintiff regarding his medical treatment for hematuria. Paul Dec. ¶ 22; Med. Rec. at 144-47. At that time, Nurse Paul reiterated the substance of his conversation with plaintiff on September 8, 2014, and explained to plaintiff that he had undergone multiple tests at MRRJ. Id. On the same day, plaintiff was sent offsite, and he underwent a CT scan of the abdomen and pelvis, which showed a small cortical cyst in the right kidney and several small kidney stones, but there were no other significant diagnostic findings. Paul Dec. ¶ 23; Med. Rec. at 138-40; Ohai Dec. ¶ 21.

On September 15, 2014, plaintiff submitted a sick call request indicating that he continued to have blood in his urine and that he wanted to know the results of his CT scan. Paul Dec. ¶ 24; Med. Rec. at 38, 58-59; Ohai Dec. ¶ 22. On September 19, 2014, plaintiff was seen by Dr. Ohai, who reviewed the CT scan and diagnosed plaintiff with chronic nephrolithiasis, right renal cyst, chronic constipation, and chronic back pain due to myositis from strenuous exercise, despite being counseled to stop exercising. Id. Dr. Ohai again strongly recommended that plaintiff stop exercising and increase his fluid intake, and he continued plaintiff on pain medication. Id.

On October 2, 2014, plaintiff submitted another sick call request indicating that he continued to have blood in his urine. Paul Dec. ¶ 25; Med. Rec. at 42, 56-57; Ohai Dec. ¶ 23. On October 13, 2014, he was seen by Nurse Rosla Johnson, and he was scheduled for a rectal exam. Id. On October 19, 2014, plaintiff was seen by Dr. Ohai, and plaintiff reported rectal bleeding for the prior 5-7 days. Id. At that time, plaintiff refused a rectal exam. Id.

On October 25, 2014, plaintiff submitted another sick call request indicating that he was continuing to have blood in his urine, and on October 29, 2014, plaintiff was seen by Nurse Johnson. Paul Dec. ¶ 26; Med. Rec. at 44, 51, 55-56; Ohai Dec. ¶ 24. Nurse Johnson conducted

a rectal exam, which was normal. Id. Nurse Johnson also ordered blood work and a repeat hemoccult test, and ordered an outside urology referral for a CT scan of plaintiff's abdomen and pelvis with contrast. Id.

On November 5, 2015, plaintiff was seen by urologist Dr. Brian Duck for his hematuria. Paul Dec. ¶ 27; Med. Rec. at 52, 55, 142; Ohai Dec. ¶ 25. Dr. Duck performed a CT scan and cystourethroscopy, both of which were normal. Id. Additionally, Dr. Duck indicated that plaintiff could be discharged from care to return for follow-up as needed. Id. On November 14, 2014, Dr. Ohai received and reviewed plaintiff's CT and cystourethroscopy results and noted that both were normal and that plaintiff's hematuria was likely due to plaintiff's extreme and strenuous exercise. Id. Dr. Ohai ordered that plaintiff be scheduled to be seen in a week to discuss the test results. Id.

On November 21, 2014, plaintiff was seen by Dr. Ohai regarding his exercise-induced hematuria and to discuss his test results. Paul Dec. ¶ 28; Med. Rec. at 54; Ohai Dec. ¶ 26. Dr. Ohai advised plaintiff that his test results were normal, and Dr. Ohai again instructed plaintiff to avoid strenuous exercise. Id. Dr. Ohai also noted that plaintiff had not followed medical instruction during his incarceration at MRRJ. Id.

On November 24, 2014, plaintiff was transferred to Powhatan Correctional Center. Paul Dec. ¶ 29; Med. Rec. at 1; Ohai Dec. ¶ 27.

In summary, Nurse Paul saw plaintiff two times: once for his initial assessment on September 18, 2013, and once for his annual assessment on September 8, 2014. Plaintiff admits that he saw Dr. Ohai at least seven times, and that he saw four other doctors during his incarceration at MRRJ. Dkt. No. 1 at 5. Plaintiff was seen several times regarding his specific complaints of hematuria and kidney stones, and he underwent extensive testing to rule out any serious medical conditions. All of these tests were essentially normal. When plaintiff was

advised to avoid strenuous exercise, he ignored this medical advice and continued doing up to 5,000 pushups per day. Further, plaintiff was referred to outside specialists for tests and treatment, and his diagnostic work-ups were all essentially normal. Plaintiff has not presented any evidence contesting the facts set out by defendants in their Motion for Summary Judgment and the supporting Memorandum. See Dkt. No. 34.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment as a matter of law is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must present some evidence, other than its initial pleadings, to show that there is more than just a "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Celotex, 477 U.S. at 324 (quoting Rule 56(e) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by [other evidence] designate 'specific facts showing that there is a genuine issue for trial.'"). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Those facts which the moving party bears the burden of proving are facts which are

material.  "[T]he substantive law will identify which facts are material.  Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.  An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice."  Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).  Therefore, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party.  Matsushita Elec. Indus. Co.,475 U.S. at 587.

### III. Analysis

It is well-settled that prisoners are entitled to reasonable medical care and can sue prison officials under the Eighth Amendment if such care is inadequate.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  To establish that inadequate medical treatment rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Id. at 105; Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995).  Thus, plaintiff must allege two distinct elements to state a claim upon which relief can be granted.  First, he must allege a sufficiently serious medical need.  See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious).  Second, he must allege deliberate indifference to that serious medical need.  Under this second prong, an assertion of mere negligence or even malpractice is not enough to state an Eighth Amendment violation; instead, plaintiff must allege deliberate indifference "by either actual intent or reckless disregard."  Estelle, 429 U.S. at 106; Daniels v.

Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). To do so, the prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851 (citations omitted). Significantly, a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

In this case, plaintiff does not claim that there is any specific treatment he should have received at MRRJ; however, even assuming arguendo that plaintiff has satisfied the first objective "serious medical need" component of Eighth Amendment denial of medical care test, he cannot satisfy the second subjective "deliberate indifference" component of the inquiry with respect to either named defendant. Plaintiff does not specifically allege that he suffers from a particular medical condition; instead, he simply complains of repeated episodes of dysuria, urinary tract infections, and kidney stones. With respect to these symptoms and medical issues, the uncontested evidence establishes that plaintiff's treatment at MRRJ was adequate and that none of the medical staff was deliberately indifferent to plaintiff's medical needs.

The evidence is clear that defendant Nurse Paul was not deliberately indifferent to plaintiff's medical needs while plaintiff was incarcerated at MRRJ. Nurse Paul saw plaintiff on only two occasions, for an initial assessment and for an annual assessment. Nurse Paul never saw plaintiff for any specific sick call request or specific medical complaints. When plaintiff asked Nurse Paul about his offsite referral, Nurse Paul confirmed that the appointment had been scheduled, and he subsequently advised plaintiff of that fact. Paul Dec. ¶¶ 20-22; Med. Rec. at 144-47; Ohai Dec. ¶ 27. Nurse Paul conducted plaintiff's medical assessments as required and followed up on plaintiff's referrals. Plaintiff has failed to produce any evidence establishing that Nurse Paul was deliberately indifferent to any of plaintiff's medical needs, and accordingly, Nurse

9

Paul is entitled to summary judgment in this action.

Similarly, plaintiff has failed to present evidence that could establish Dr. Ohai was deliberately indifferent to any of his medical needs. Plaintiff acknowledges that Dr. Ohai and the MRRJ medical staff ordered extensive labs, urinalysis, a KUB x-ray, a PSA test, a renal ultrasound, and Dr. Ohai specifically referred plaintiff for multiple CT scans and evaluation by an offsite urologist. Ohai Dec. ¶¶ 15, 17, 19, 20, 26, 27. All of plaintiff's test results were essentially normal, and the outside urologist did not recommend any additional treatment aside from the treatment he had already been receiving pursuant to Dr. Ohai's orders at MRRJ. Dr. Ohai also prescribed plaintiff diuretics, antibiotics, and pain medication for his chronic urinary tract infections and kidney stones. Id. Dr. Ohai consistently recommended that plaintiff restrict his extensive exercising to help improve his own medical conditions, but plaintiff continuously ignored Dr. Ohai's medical advice, severely aggravating his condition. None of the medical personnel that plaintiff saw during his incarceration at MRRJ, including Nurse Henning, Nurse Johnson, Dr. Boakye, Dr. Campbell, and Dr. Duck, recommended any additional treatment that was different than what plaintiff had already been receiving under Dr. Ohai's care. Therefore, it is abundantly clear that Dr. Ohai adequately managed and treated plaintiff's medical condition and did not act with deliberate indifference to plaintiff's medical needs, and Dr. Ohai is entitled to summary judgment.

### IV. Plaintiff's Request for Counsel

In his Response to Memorandum and his pending Motion to have Court Appointed Legal Assistance, plaintiff requests an attorney in this case. See Dkt. Nos. 27, 34. A court may request an attorney to represent an indigent plaintiff proceeding in forma pauperis. 28 U.S.C. § 1915(e)(1). The Fourth Circuit, however, has limited the appointment of counsel to cases where "exceptional circumstances" exist, such as cases with particularly complex factual and legal issues or with a

litigant who is unable to represent himself adequately. Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). In this case, it is unnecessary to appoint counsel for plaintiff, as plaintiff's allegations that he "never took a law suit out befour [sic]" and that he does "not under stan [sic]" defendants' Motion for Summary Judgment, do not constitute "exceptional circumstances" that would warrant appointment of counsel. To date, plaintiff ably filed his complaint, motions, and response to defendants' Motion for Summary Judgment, and he has demonstrated comprehension of the procedures and laws of this Court. Thus, plaintiff's request for the appointment of counsel must be denied.

## V. Conclusion

For the foregoing reasons, plaintiff's request for the appointment of counsel must be denied and defendants' Motion for Summary Judgment must be granted. An appropriate Order shall issue.

Entered this 28th day of April 2016.

Alexandria, Virginia

T. S. Ellis, III
United States District Judge